**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| v. | ) ) | 1:07-cv-00587 CKK |
| H2O INDUSTRIAL SERVICES, INC.<br>a/k/a H2O Industrial Services, LLC<br>a/k/a H2O Industrial Services LLC<br>a/k/a H2O Industrial Services | ) ) ) ) ) | |
| Defendant | ) | |

## MOTION FOR ENTRY OF JUDGMENT BY DEFAULT

Plaintiff, International Painters and Allied Trades Industry Pension Fund, respectfully moves this Court for entry of judgment by default against Defendant, H2O Industrial Services, Inc. a/k/a H2O Industrial Services, LLC a/k/a H2O Industrial Services LLC a/k/a H2O Industrial Services ("Company" or "Defendant") in the amount of $16,838.32. On May 9, 2007, Plaintiff filed with the Clerk of the Court a Request to Enter Default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). Default was subsequently entered on May 10, 2007.

Accompanying this motion are a supporting memorandum of points and authorities, the Declaration of Thomas C. Montemore (attached as Exhibit 1), the Declaration of Sanford G.

**[GOTO NEXT PAGE]**

182984-1

Rosenthal (attached as Exhibit 2), and a proposed default judgment.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY:/s/ Sanford G. Rosenthal
SANFORD G. ROSENTHAL, ESQUIRE
(I.D. NO. 478737)
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0611
Date:   May 14, 2007                    Attorney for Plaintiff


OF COUNSEL:
JEROME A. FLANAGAN, ESQUIRE
Jennings Sigmond, P.C.
510 Walnut Street, Suite 1600
Philadelphia, PA 19106
(215) 351-0660

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED | ) | |
| TRADES INDUSTRY PENSION FUND | ) | |
| | ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| v. | ) | 1:07-cv-00587 CKK |
| | ) | |
| H2O INDUSTRIAL SERVICES, INC. | ) | |
| a/k/a H2O Industrial Services, LLC | ) | |
| a/k/a H2O Industrial Services LLC | ) | |
| a/k/a H2O Industrial Services | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MOTION FOR ENTRY OF JUDGMENT BY DEFAULT**

Plaintiff, International Painters and Allied Trades Industry Pension Fund (the "Pension Fund"), is entitled to an Order entering judgment by default against Defendant, H2O Industrial Services, Inc. a/k/a H2O Industrial Services, LLC a/k/a H2O Industrial Services LLC a/k/a H2O Industrial Services ("Company" or "Defendant"), in the amount of $16,838.32.

The Pension Fund served its Complaint on Defendant on April 18, 2007. To date, Defendant has failed to answer the Complaint or to otherwise defend this action. Plaintiff filed a Request to Clerk to Enter Default against the Defendant pursuant to Fed. R. Civ. P. 55(a) on May 9, 2007. Default was entered against the Defendant on May 10, 2007. Plaintiff now submits its motion for entry of judgment by default.

In light of Defendant's default and Defendant's continuing failure to appear or otherwise defend, the Pension Fund is entitled to judgment by default against Defendant without a hearing. Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983); Draisner v. Liss

Realty, 211 F. 2d 808 (1954). Moreover, where a defendant, such as the one here, fails to

respond to the Complaint, all factual allegations in the Complaint are deemed admitted.

Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d

Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of

fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978)

(allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent

conveyance or voidable preference).

Defendant is and has been party to collective bargaining agreements (singly or jointly

"Labor Contract") with the various local unions and district councils affiliated with the

International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union"),

including Local Union No. 460 ("Local 460"). Under the Labor Contract, Defendant is required

to remit fringe benefit contributions and other sums to Plaintiff. See, Exhibit 1, Montemore

Declaration, ¶5. The failure to pay these fringe benefit contributions and other amounts results

in a delinquency to the Plaintiff.

## ARGUMENT

A.   **ENTRY OF JUDGMENT AGAINST DEFENDANT FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS ENTIRELY APPROPRIATE**

1.   **Company is Bound by the Terms and Conditions of a Collective Bargaining Agreement with the Union.**

Company is a party to a Labor Contract with the Union. See, Exhibit 1, Montemore

Declaration, ¶5. The Labor Contract provides for the payment of contributions to the Pension

Fund for time worked by or paid to employees who perform work covered by its terms and

conditions. See, Exhibit 1, Montemore Declaration, ¶6. Failure to make these contributions, or

to submit either incorrect or late remittance reports, results in a delinquency to the Pension Fund.

Ibid. Under the Labor Contract, the Pension Fund also has the right to audit the signatory's

payroll books and related records to determine that all of the required contributions have been

paid. See, the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement",

attached as Exhibit 1 to the Complaint filed in this matter and incorporated by reference), Art.

VI, Sec. 6.  Finally, under the terms of the Labor Contract, the employer agrees to be bound by

the Trust Agreement and the International Painters and Allied Trades Industry Pension Plan

("Plan") (attached as Exhibit 2 to the Complaint filed in this matter and incorporated by

reference) and by all amendments thereto and actions taken by the trustees of the Pension Fund.

See, Complaint, ¶¶7-8; Exhibit 1, Montemore Declaration, ¶¶5, 6.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. §1145, provides:

> Every Employer who is obligated to make contributions to a
> bargained agreement shall … make contributions in accordance
> with … such agreement.

If an employer fails to make the contributions as required by the collective bargaining

agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section

502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory

award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section

515:

    A.    the unpaid contributions;

    B.    interest on the unpaid contributions;[1]

    C.    an amount equal to the greater of:

---

[1]    Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. See, Complaint, Exhibit 2.

(i)    interest on the unpaid contributions; or

(ii)   liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under subparagraph (a);[2]

D.    reasonable attorneys' fees and costs of the action, to be paid by the defendant; and

E.    such other legal or equitable relief as the court deems appropriate.

As stated above, Defendant has failed to submit contributions for the period January 2006 to February 2007. *See*, Exhibit 1, Montemore Declaration, ¶7. As a result, Plaintiff is entitled to judgment in at least the amount of $16,838.32.

### a.    Defendant owes fringe benefit contributions in the amount of $10,606.66.

Defendant owes the Pension Fund at least $8,056.53 in contributions for the months of April 2006 through July 2006 based on remittance reports submitted by the Company. Montemore Declaration, ¶7. Defendant owes at least $2,550.13 in contributions for August 2006 based on an estimate prepared by Plaintiff. The estimated contributions are calculated by the Pension Fund based on the average of the last three months of remittance reports filed by Company. The contributions are estimated because Company failed to submit the required remittance report for that period. The total for unpaid and estimated contributions is $10,606.66.

---

[2]    ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. *See*, Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. *See*, Complaint, Exhibit 1.

**b.      Defendant owes late charges in the amount of $30.21.**

ERISA and §10.12 of the Plan allow other legal or equitable relief as the Court deems

appropriate.  Article VI, § 4 of the Pension Fund's Agreement and Declaration of Trust provides

for "late charges" in the form of interest on contributions paid more than twenty days after the

due date and prior to litigation.   Defendants owe $30.21 in late charges for the period February

2006 through June 2006.  Montemore Declaration, ¶8.  See also, International Brotherhood of

Painters and Allied Trades International Union and Industry Pension Fund v. Claser Painting

Corporation, No. 91-7185, slip. op. at *1-2 (D.C. Cir. Feb. 1, 1993).

**c.      Defendant owes interest through May 15, 2007 in the amount
of $664.16**

Section 10 of the International Painters and Allied Trades Industry Pension Plan ("Plan")

(attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) sets

the interest rate on delinquent contributions according to the Internal Revenue Service rate for

delinquent taxes.  Interest accruing through May 15, 2007 on Defendant's delinquent

contributions totals $664.16. Interest shall continue to accrue on unpaid contributions in

accordance with the Plan and ERISA until the date of actual payment. Montemore Declaration,

¶9; 29 U.S.C. § 1132(g)(2); 26 U.S.C. § 6621.

**d.      Defendant owes liquidated damages in the amount of
$2,121.34.**

ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated

damages be awarded in an amount equal to the greater of interest or 20% of unpaid contributions

due at the commencement of the lawsuit and those which become delinquent during the course

of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust Agreement also provides for the

assessment of liquidated damages on contributions paid after the due date. As indicated above,

Defendant owes at least $10,606.66 in delinquent contributions. Twenty percent (20%) of these amounts is $2,121.34. The total amount of liquidated damages ($2,121.34) is greater than the interest due ($664.16). Therefore, the amount of liquidated damages which Defendant owes is $2,121.34. *See*, Exhibit 1, Montemore Declaration, ¶10; 29 U.S.C. §1132(g)(2)(C).

### e.    Defendant owes attorneys' fees in the amount of $3,415.95.

Plaintiff has incurred $3,415.95 in attorneys' fees and costs in connection with this matter through May 14, 2007. <u>See</u>, Exhibit 2, Rosenthal Declaration, ¶2; Exhibit 3. <u>See</u>, 29 U.S.C. §1132(g)(2). The Pension Fund is entitled to reimbursement of all attorneys' fees and costs it incurs in connection with the enforcement and collection of any judgment entered by the Court. *See, Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza Co.*, 57 Fed. Appx. 972 (3d Cir. 2003); *Free v. Briody*, 793 F.2d 807 (7th Cir. 1986); *Sheet Metal Workers Health and Welfare Trust Fund v. Big D Service Co.*, 867 F.2d 852 (10th Cir. 1989).

### 2.    The Pension Fund is entitled to injunctive relief

The failure of Defendant to comply with its contractual and statutory obligations results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations. The Pension Fund is obligated by express mandates of ERISA and by the documents and instruments by which it is administered to provide benefits and pension credits to all of Company's employees who are otherwise eligible to receive them. 29 C.F.R. 2530-200b-2(a)(1) and (2); <u>Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc.</u>, 511 F.Supp. 38 (D.Minn. 1980), <u>aff'd</u> <u>sub. nom.</u>, <u>Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway Co., Inc.</u>, 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is required to provide these benefits and credits regardless of whether Defendant makes the contributions. For example, if employees perform work covered by the collective bargaining agreement, the

Pension Fund has affirmative obligations to credit hours for retirement benefits regardless of whether a signatory employer makes contributions to the Pension Fund. The result of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the Pension Fund's resources.

Additionally, where, as here, Defendant fails to remit its contributions, the Pension Fund loses the income that it would have earned by investing those contributions. Combining this loss of investment income with the Pension Fund's requirement to continue paying benefits to Company's employees (as well as to the employees of other signatory contractors) will eventually affect the actuarial soundness of the Pension Fund as well as deplete the resources available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of Defendant's failure to pay its contributions. These losses and added expenses significantly impair the Pension Fund's ability to continue to provide benefits to not only Company's employees, but also to employees of companies that comply with their contractual obligations. In light of Defendant's failure to comply with its contractual and statutory obligations to the Pension Fund to submit timely, accurate remittance reports and pension contributions each month, and the irreparable harm which Defendant's malfeasance causes the Pension Fund, the Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc. , 4 EBC 1199, 1200 (D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C. 1986).

**B.    DEFENDANT SHOULD BE ORDERED TO PRODUCE THE APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND MUST PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING**

The determination of an employee's eligibility for benefits is made based upon information contained in the remittance report, to be filed monthly by each and every signatory employer. A proper determination of eligibility is not possible if remittance reports are not submitted or if they contain incorrect information. See, 29 U.S.C. §1132(g)(2)(E) (equitable relief); Teamsters Local 639 – Employers Trust v. Jones & Artis Construction Co., 640 F. Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension Fund v. Hartline – Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit Pension Fund v. Northwest Concrete, 640 F. 2d 1350, 1352 (6th Cir. 1981).

In order to determine whether the contributing employer has made all required contributions and correctly reported hours worked and paid to its employees, the Pension Fund has the right to review all of the employer's records that relate to its contributory obligation. Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit the Pension Fund's auditors to review those records upon request. Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994).

In the present case, the Trust Agreement obligates Defendant to allow the audit. See Complaint, Exhibit 1, Art. VI, Sec. 6.  The scope of records subject to review is broad, and include those records the auditors reasonably deem necessary to conduct an audit. DeMarco v. C & L Masonry, 891 F.2d 1236 (6th Cir. 1989);  See also Exhibit 1, Montemore Declaration, ¶11. In addition to the routine payroll records (e.g., time cards, cancelled payroll checks, payroll

ledgers and payroll tax returns), they can include the general check registers and cancelled checks, general disbursements ledgers and federal and state corporate income tax returns. Ibid.

An audit is necessary in this case in order to determine the exact amount due to the Pension Fund because of Defendant's failure to submit contractually-required remittance reports and furthermore, to ensure that the remittance reports submitted by Defendant are correct. See Exhibit 1, Montemore Declaration, at ¶¶7, 11. The Defendant's obligations under the Agreement and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an audit. The Court should order Defendant to produce its records for an audit for all periods in which the Defendant is obligated to make contributions to the Pension Fund so that a precise determination of the amount owed can be made. Upon completion of the audit, the Court should enter a further judgment against Defendant for all additional amounts found to be due and owing under the Agreement and ERISA.

## CONCLUSION

Plaintiff, thus, requests that the Court enter a judgment against Defendant, H2O Industrial Services, Inc. a/k/a H2O Industrial Services, LLC a/k/a H2O Industrial Services LLC a/k/a H2O Industrial Services ("Company" or "Defendant") in the amount of $16,838.32 and, in light of the clear statutory intent of ERISA, it is further requested that this Court grant the Pension Fund all

**[GOTO NEXT PAGE]**

other relief to which it may be entitled under applicable law and as requested in the Motion for

Default Judgment.

                                     Respectfully submitted,

                                     JENNINGS SIGMOND, P.C.

BY: /s/ Sanford G. Rosenthal
                     SANFORD G. ROSENTHAL (BAR NO. 478737)
                     The Penn Mutual Towers, 16th Floor
                     510 Walnut Street, Independence Square
                     Philadelphia, PA 19106-3683
                     (215) 351-0611
                     Counsel for Plaintiff

DATE: May 14, 2007

OF COUNSEL:
Jerome A. Flanagan
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0660

## CERTIFICATE OF SERVICE

I hereby certify this 14th day of May, 2007, that I caused to be served a copy of the

foregoing Motion for Entry of Judgment by Default, Memorandum of Points and Authorities in

Support thereof, Declaration of Thomas C. Montemore, Declaration of Sanford G. Rosenthal and

proposed Default Judgment by sending a copy of same via U.S. Mail, postage-prepaid to:

> H2O Industrial Services, Inc.
> a/k/a H2O Industrial Services, LLC
> a/k/a H2O Industrial Services LLC
> a/k/a H2O Industrial Services
> 284 West 1050 North
> Chesterton, IN 46304

DATE: <u>May 14, 2007</u>                    <u>s/ Sanford G. Rosenthal</u>
                                             SANFORD G. ROSENTHAL, ESQUIRE

182894.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
                                   )
                    Plaintiff      )    CIVIL ACTION NO.
        v.                         )    1:07-cv-00587 CKK
                                   )
H2O INDUSTRIAL SERVICES, INC.      )
        a/k/a H2O Industrial Services, LLC )
        a/k/a H2O Industrial Services LLC )
        a/k/a H2O Industrial Services )
                                   )
                    Defendant      )

## <u>DECLARATION OF THOMAS MONTEMORE</u>

THOMAS MONTEMORE states and declares the following:

1.      My name is Thomas C. Montemore and I am the Assistant to the Fund

Administrator of the International Painters and Allied Trades Union and Industry Pension Fund

("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I

served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the

Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from

1982 to 1986, and File Clerk beginning in 1979.

2.      The Pension Fund is an "employee benefit pension plan" as defined in Section

3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union

of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry

whose employees are members of or otherwise represented by the Union and its district councils

and local unions, for the purpose of providing retirement income to the employees. The Pension

Fund is administered in the District of Columbia from its and my principal place of business at

1750 New York Avenue, N.W., Washington, D.C. 20006.



3.     I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.     The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.     My review of the regular business records maintained by the Pension Fund reveals that the defendant, H2O Industrial Services, Inc. a/k/a H2O Industrial Services, LLC a/k/a H2O Industrial Services LLC a/k/a H2O Industrial Services ("Company" or "Defendant"), was a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Contract") with the International Union of Painters and Allied Trades, AFL-CIO, CLC.  Under the terms of the Labor Contract, Company is bound to the Trust Agreement and Plan.

6.     The collective bargaining agreement requires Defendant to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

182944-1                                    2

7.      Based upon information currently available to the Pension Fund, Defendant presently owes the Pension Fund contributions for the period April 2006 through August 2006 in the amount of at least $10,606.66.   This amount includes an estimate for the month of August 2006, a period for which Defendant has failed to submit both contributions and remittance reports to the Pension Fund.  For the period in which the Pension Fund has not received remittance reports and corresponding contributions, the Pension Fund is forced to estimate an amount due from Defendants.  The estimate is reached by averaging the three months of contributions prior to the first month in which no report is received. Using this methodology, the Pension Fund has calculated the amount due for August 2006 as follows:

| MONTH | AMOUNT |
|-------|--------|
| May 2007 | $ 2,346.96 |
| June 2007 | $ 2,951.75 |
| July 2007 | $ 2,351.69 |
| TOTAL | $ 7,650.40 |

$7,650.40 divided by three equals $2,550.13, which is used as the estimated contribution amount for August 2006.

8.      Defendant owes late charges in the amount of $30.21.  ERISA and §10.12 of the Plan allow other legal or equitable relief as the Court deems appropriate.  Article VI, § 4 of the Pension Fund's Agreement and Declaration of Trust provides for "late charges" in the form of interest on contributions paid more than twenty days after the due date and prior to litigation. Defendants owe $30.21 in late charges for the period February 2006 through June 2006.

9.      Defendant owes interest through May 15, 2007 in the amount of $664.16 on the unpaid pension contributions set forth in ¶7. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

10.    Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendant in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through May 15, 2007 is $664.16. Twenty percent (20%) of Defendant's unpaid contributions is $2,121.34. Since that amount is greater than the interest amount ($664.16), Defendant owes $2,121.34 in liquidated damages.

11.    The Pension Fund routinely audits employers to ensure all required contributions are being paid. It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance with its statutory obligations. In performing these audits, the auditor reviews the payroll records of each employee who performs work of the type covered by the collective bargaining agreement. These records will include time cards, payroll ledgers, payroll summaries, time slips, or such other payroll records as the employer maintains which will indicate the number of hours that each individual employee worked and was paid for each week. The information gathered from these records is then compared to the wage information found on the employer's federal, state and municipal tax returns and on the W-2 statements provided to the employees. The auditor also reviews disbursement ledgers and check registers to identify potential wage payments to employees not made through the payroll system. Job/project contracts are reviewed to determine whether the work performed is within the scope of the collective bargaining agreement. After compiling the information gathered from the above records, a schedule of the contributions that should have been paid according to the contract is prepared. This schedule, which is broken down by month, is then compared to the actual

182944-1                                          4

contributions which the employer did submit to the Pension Fund, with any differences noted. Once completed, an audit report is forwarded to the employer for its review and payment.

12.    Despite a continuing contractual obligation to do so, Defendant has repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions _and_ the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Defendant, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendant's

182944-1                                    5

refusal to contribute as it is bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Defendant to cover those benefits. Therefore, Defendant should be required to submit timely current contributions and remittance reports in the future.

13.     I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Defendant and request that this Court consider the same as proof in support of the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

Pursuant to 28 U.S.C. §1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on: _5/11/07_

14.

_____
THOMAS MONTEMORE

182944-1                                          6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| v. | ) ) | 1:07-cv-00587 CKK |
| H2O INDUSTRIAL SERVICES, INC. a/k/a H2O Industrial Services, LLC a/k/a H2O Industrial Services LLC a/k/a H2O Industrial Services | ) ) ) ) ) | |
| Defendant | ) | |

### DECLARATION OF SANFORD G. ROSENTHAL, ESQUIRE

SANFORD G. ROSENTHAL states:

1.     I am a shareholder with the law firm of Jennings Sigmond, P.C. with

responsibility for the case captioned *International Painters and Allied Trades Industry Pension*

*Fund v H2O Industrial Services, Inc. a/k/a H2O Industrial Services, LLC a/k/a H2O Industrial*

*Services LLC a/k/a H2O Industrial Services*, Civil Action No. 07-587 (CKK).  I submit this

declaration to support an award of attorney fees to Plaintiff.

Case Fees

2.     Attached as Exhibit 3 to Plaintiff's Motion for Entry of Judgment by Default is a

list showing all work performed by the office of Jennings Sigmond, P.C. and related costs in

connection with in this action through May 14, 2007.  The listing was prepared from

contemporaneous attorney time and expenses records and bills, the originals of which are

maintained in the regular business records of Jennings Sigmond. Each piece of work is

182894.1



separately coded and the work performed is described. The fees relevant to this case are

$2,928.00 and expenses are $487.95 for a total of $3,415.95.

3.     The identity of those performing services related to this matter and normal hourly

rates are as follows.

| INITIALS | NAME | TITLE | HOURLY RATE |
|----------|------|-------|-------------|
| SGR | Sanford G. Rosenthal | Shareholder | $200.00 |
| JAF | Jerome A. Flanagan | Associate | $200.00 |
| CTM | Cathy T. Morton | Paralegal | $ 70.00 |

4.     Plaintiffs only seek judgment for fees in the bills, which reflect a special fee

schedule with the International Painters and Allied Trades Industry Pension Fund for a uniform

$200.00 per hour rate for all lawyers and $70.00 per hour for paralegals and clerks.

Attorney Background and Experience

5.     Sanford G. Rosenthal. Sanford G. Rosenthal is a firm shareholder and co-leader

of the ERISA practice and has practiced law for 23 years. He received his undergraduate

education at Pennsylvania State University, where he graduated in 1971. He worked as Audit

Manager and Office Manager in the administrative team for the Teamsters Health and Welfare

and Pension Funds of Philadelphia and Vicinity from 1971 through 1980. He attended the

Dickinson School of Law, where he was awarded the Degree of Juris Doctor in 1983. He is a

member of the Bar of the Supreme Court of Pennsylvania and the District of Columbia Bar. He

is also admitted to practice before the United States Court of Appeals for the Third Circuit and

the United States District Courts for the Eastern and Middle Districts of Pennsylvania. His

practice concentrates on the representation of multiemployer benefit funds in delinquency

litigation and counseling. A sample of his litigation experience is available in 32 published cases

that can be obtained through a Westlaw search for "AT ("Sanford G. Rosenthal") and Jennings" in the FPENS-CS library.

6.    <u>Jerome A. Flanagan</u>. Jerome A. Flanagan, an associate in the firm, has practiced law for three (3) years. He graduated in 2000 from the University of Scranton, with a Bachelors Degree in English.  He received his law degree in 2003 from Syracuse University. Following law school, Mr. Flanagan served as a judicial clerk in Lackawanna County, Pennsylvania. Prior to joining Jennings Sigmond, P.C., Mr. Flanagan practiced insurance defense in the Philadelphia area.

7.    <u>Catherine T. Morton</u>. Catherine T. Morton is a Paralegal in the Jennings Sigmond office. She has been with the office for six (6) years and is experienced in corporate computer database research, electronic filing procedures throughout the country and preparation and documentation of service of complaints and other pleadings for employee benefit collections matters, in addition to other skills.

<u>Legal Market Benchmark</u>

8.    The time and fees charged in this case are reasonable based on prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation in both the Philadelphia and District of Columbia markets.

9.    My opinion that the time and fees are reasonable is based on a number of factors, including the following.

(a)    We serve as counsel or co-counsel to over 20 multiemployer employee benefit funds groups.  The firm currently has 17 lawyers, with a dedicated benefits department of seven (7) lawyers plus part-time work by three (3) other lawyers in the labor practice.  The work is specialized and our competition often is large corporate firms with both employee benefits and

federal litigation experience.  In my experience, our fees are normally are substantially lower than the charges of larger firms.

(b)     The flat rate is this case is consistent with market rates in published surveys by Altman Weil, a leading law firm consultant. Specifically, Altman Weil found a median hourly rate in 2005 of $195 for associates in the Middle Atlantic region (encompassing both Philadelphia and the District of Columbia) and a range up to $273 per hour at the 90th percentile. See Associate Hourly Billing Rates (March 10, 2006), reprinted from http://www.altmanweil.com/PracticeSpecialtiesRates/ and attached hereto as Exhibit 4. The median rate for partners (shareholders) in employee benefits litigation was $305 per hour, *id.*, Practice Specialties and Hourly Rates (October 1, 2005),   A $200 rate in 2006 is only a 2.56% increase over the 2005 median for associates only.

(c)     The fees are consistent with market ranges in a 2004 Ohio bar association survey, downloads.ohiobar.org/conventions/convention2005/session508%20Economics%20of%20Law. pdf, attached as Exhibit 5, especially pages 26 and exhibit 27, especially after giving weight to increases from 2004 to 2006 (roughly 5% per year on average in the Ohio survey) and regional differences reflected in Altman Weil data (Ex. 4), showing an 8.33% higher rate in median associates' rates in the Middle Atlantic region ($195) over the East North Central region covering Ohio ($180)).  The Ohio survey showed median hourly associate rates in the comparable downtown Cleveland, Cincinnati and Columbus areas of $200 - $235 per hour, ranging up to $ $334 - $359 at the 90[th] percentile. See, Exhibit 5 (excerpt page 26).  It also shows that a $70 per hour paralegal rate is less than the median rate for 5 years experience in Ohio, without adjustment for regional differences, Exhibit 5 (Ex. 27).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Signed on: <u>May 14, 2007</u>

<u>s/ Sanford G. Rosenthal</u>
SANFORD G. ROSENTHAL, ESQUIRE
(I.D. NO. 478737)
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0611
Attorney for Plaintiff

OF COUNSEL:
JEROME A. FLANAGAN
Jennings Sigmond, P.C.
510 Walnut Street, Suite 1600
Philadelphia, PA 19106
(215) 351-0660

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:07-cv-00587 CKK |
| H2O INDUSTRIAL SERVICES, INC. a/k/a H2O Industrial Services, LLC a/k/a H2O Industrial Services LLC a/k/a H2O Industrial Services | ) ) ) ) ) | |
| Defendant | ) ) ) | |

**JENNINGS SIGMOND ATTORNEYS' FEES – May 2007**

| | | | |
|---|---|---|---|
| Jerome A. Flanagan, Esquire | JAF | | |
| Sanford G. Rosenthal, Esquire | SGR | Cathy T. Morton, Paralegal | CTM |

| <u>Date</u> | <u>Attorney</u> | <u>Task</u> | <u>Time</u> |
|---|---|---|---|
| 5/2/07 | JAF | Phone conference with Joe at Legal Errands<br>Review of correspondence from Joe at Legal Errands<br>Letter to Court regarding Affidavit of Service<br>Memo to File | 0.5 |
| 5/3/07 | JAF | Review of Documents<br>Review of Docket | 0.2 |
| 5/8/07 | JAF | Review of Documents<br>Review of Docket<br>Preparation of Correspondence to P. Gilbert<br>Memo to file | 0.5 |
| 5/9/07 | JAF | Review of Documents<br>Preparation of Request to Enter Default<br>Preparation of Montemore Declaration<br>Preparation of Motion for Judgment by Default<br>Preparation of Memorandum of Law<br>Preparation of Attorney Affidavit | 4.9 |

182894.1

EXHIBIT
3

| 5/10/07 | JAF | Review of delinquency;<br>Preparation of Correspondence to P. Gilbert<br>Review of Correspondence from P. Gilbert regarding<br>updated delinquency;<br>Review of documents;<br>Review and revision of Default Motion, Memorandum and<br>Exhibits | 5.4 |
| 5/14/07 | JAF | Review of signed Montemore Declaration;<br>Review and Revision of attorneys' fees exhibits;<br>Final review of Motion, Memorandum and exhibits prior<br>to filing. | 1.5 |

**TOTAL:** **13.0**

## April 2007 Summary

JAF    13.0 Hrs x $200.00    =    $2,600.00

Attorneys' Fees from 3/06    =    $328.00
Costs                        =    $487.95

**Grand Total:**    **$3,415.95**

# Jennings Sigmond, P.C.
## Time And Expense Details

Report ID:  OT2025 - 11175
Wednesday, May 09, 2007

| Client | Client Reporting Name | Matter | Beginning To End<br>Matter Reporting Name | | Billing Timekeeper |
|---|---|---|---|---|---|
| P'TINTF | IUPAT Industry Pension Fund | 28798 | H 2 0 Industrial Services, Inc | | Sigmond, Richard B. |

### Unbilled Time

| Date | Timekeeper | Hours Worked | Hours To Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 4/12/2007 | CTM | 0.20 | 0.20 | 70.00 | $14.00 | | | Review of Electronic Court Documents regarding Order |

**Unbilled Time Totals**    0.20    0.20    $14.00

### Unbilled Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 4/1/2007 | $86.15 | CRDB | Computer Research - Dun & Bradstreet |
| 4/4/2007 | $4.06 | COPY | Photocopies |

**Unbilled Expenses Totals**    $90.21

### Billed Time

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 3/19/2007 | JAF | 1.50 | 1.50 | 200.00 | $300.00 | | | Review of Documents; Computer Research; Preparation of Complaint |
| 3/29/2007 | CTM | 0.20 | 0.20 | 70.00 | $14.00 | | | Review of Electronic Court Documents regarding Summons and Complaint |

**Billed Time Totals**    1.70    1.70    $314.00

### Billed Expenses

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 3/21/2007 | $350.00 | 7100 | Filing Fee - Complaint |
| 3/23/2007 | $47.74 | COPY | Photocopies |

**Billed Expenses Totals**    $397.74

| | Hours Worked | Hours To Bill | Fee Amount | Expense Amount | Total Amount |
|---|---|---|---|---|---|
| **Report Totals** | 1.90 | 1.90 | $328.00 | $487.95 | $815.95 |

*** End Of Report ***

# Associate Hourly Billing Rates by Region



| Region | Median | 90th Percentile |
|---|---|---|
| New England | $185 | $250 |
| Middle Atlantic | $195 | $273 |
| South Atlantic | $190 | $270 |
| E. So. Central | $170 | $220 |
| W. So. Central | $175 | $240 |
| E. No. Central | $180 | $275 |
| W. No. Central | $145 | $190 |
| Mountain | $175 | $250 |
| Pacific | $195 | $290 |

Legend:
□ Median
■ 90th Percentile

Source: Altman Weil Survey of Law Firm Economics
2005 Edition

See following page for states included
in each region.



EXHIBIT
4



Census Regions and Divisions of the United States





# Median Hourly Billing Rates
## Litigation Specialties

### Top Five Hourly Rates
### Equity and Non-Equity Partners

| | Antitrust | IP | Tax | Employee Benefits | Criminal |
|---|---|---|---|---|---|
| Rate | $380 | $330 | $325 | $305 | $305 |

Source: Altman Weil Survey of Law Firm Economics 2005 Edition



# THE 2004 ECONOMICS OF LAW PRACTICE IN OHIO SURVEY

**OSBA**

## Introduction

During the spring of 2004, the Ohio State Bar Association, Section on Solo, Small Firms and General Practice (OSBA) surveyed the Ohio legal community on the economics of law practice. Two online surveys were utilized, replacing the single mail-based survey instrument provided in past years.

With respect to the economics of law practice, similar studies were undertaken in 2001, 1998, 1994 and 1990. The objectives of these studies were to determine, among other things:

- current demographics of practicing attorneys;

- attorney net income by practice category, gender, field of law, office location, work status, years in practice and firm size;

- associate, legal assistant, and secretary compensation by years of experience and office location;

- prevailing average hourly billing rates for attorneys by a variety of indicators, and rates for legal assistants by years of experience, firm size and office location;

- attorney time allocated to billable and non-billable professional activities; and

- overhead expenses associated with maintaining a private practice by office location and firm size.

Attorneys can compare themselves and their firms against "norms" established by the aggregation of survey data. Time series information is also provided to denote trends. Norms include statistics that are organized by combinations of office location, firm size, gender, work status (full-time vs. part-time), practice class, area of legal concentration and years of practice.

The above information has been consolidated into this reference to help guide attorneys as they plan and manage their professional lives.

For 2004, a survey dedicated to law office technology and marketing issues was also fielded at the same time as the economics survey. Findings from this survey are summarized as Current Issues on Law Office Technology and Marketing in Ohio, 2004 and are available at www.ohiobar.org

© 2004 Ohio State Bar Association. All rights reserved.                    1

**EXHIBIT**
5

## IV.    BILLING RATES AND PRACTICES

A.    Takeaways.

1.    The median hourly billing rate for all attorneys was *$175* for 2004 and *$110* for 1994. The average annual rate of increase in hourly billing rates during this time period was *5.9%.*

2.    Rates have increased the most in *suburban Cincinnati* (7.3% per year) and least in *suburban Columbus* (2.5%).

3.    Rates increased most for *partners in firms with 8+ partners* (5.9%) and least for *partners in firms with two to seven partners* (3.7%).

4.    *Rates increased the most for respondents in* firms with two to five attorneys (6.05%) and least for respondents in *firms with more than 20 attorneys* (4.2%).

5.    Rates increased the most for *estate planning attorneys* (9.5%) and *tax attorneys* (7.6%) and least for *bankruptcy* (2%) and *municipal/public entity* attorneys (- 1%).

6.    Fifty-six percent of respondents had *not changed* their rates in one year or more.

7.    When rates are raised, the prevalent increase is *6-10%* (41% of respondents).

8.    *Uncollectibles* (greater than 2% of fees billed) are increasing. The prevalent range is *3-8% of fees billed* (33% in 2004 and 30% in 2000).

9.    Attorneys are *increasingly adding service charges* to delinquent accounts where applicable (30% in 2004 compared with 20% in 1990).

B.    Implications.

1.    There is still pricing power for legal services despite intense competition and an ever growing supply of attorneys.

2.    Existing and new practice management benchmarks should be available, especially for solos and small firm practicing attorneys, to enable relative standing self assessments.

## V.    ATTORNEY TIME ALLOCATIONS

A.    Takeaways.

1.    The median value for *total hours* worked in 2004 rose to *50* from *48* in 1990 (2500 hours per year on a 50-week year).

**Law Firm Billing Rates and Billing Practices**

## 2004 Attorney Hourly Billing Rates

The reported 2004 median hourly billing rate is $200. The average is $206. While several interacting factors affect the setting and application of hourly billing rates, Exhibit 21 includes three discrete factors: respondents' firm size, years in practice and office location, while Exhibit 22 identifies respondents' primary source of income, and practice category.

**Exhibit 21    2004 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION**

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| Size of Firm | N | Mean | 25th | Median | 75th | 95th |
| 1 | 196 | $155 | $125 | $150 | $175 | $225 |
| 2 | 55 | 164 | 125 | 150 | 185 | 250 |
| 3-6 | 77 | 176 | 150 | 175 | 200 | 256 |
| 7-10 | 40 | 196 | 150 | 180 | 244 | 300 |
| 11-20 | 39 | 189 | 155 | 195 | 225 | 275 |
| 21-50 | 49 | 206 | 163 | 200 | 238 | 320 |
| 51+ | 72 | 249 | 186 | 240 | 300 | 377 |
| **Yrs. in Practice** | | | | | | |
| 5 or less | 70 | $147 | $125 | $143 | $175 | $222 |
| 6-10 | 78 | 164 | 125 | 150 | 190 | 250 |
| 11-15 | 65 | 185 | 150 | 180 | 228 | 296 |
| 16-25 | 131 | 184 | 150 | 165 | 220 | 306 |
| More than 25 | 183 | 200 | 150 | 190 | 230 | 340 |
| **Office Location** | | | | | | |
| Greater Cleveland | 121 | $200 | $150 | $185 | $238 | $350 |
| Greater Cincinnati | 61 | 199 | 150 | 180 | 245 | 325 |
| Greater Columbus | 120 | 194 | 150 | 180 | 233 | 300 |
| Greater Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Northeast Region | 98 | 165 | 125 | 163 | 196 | 250 |
| Northwest Region | 47 | 152 | 120 | 150 | 175 | 263 |
| Southern Region | 56 | 155 | 125 | 150 | 175 | 250 |
| | | | | | | |
| Downtown Cleveland | 61 | $237 | $183 | $235 | $283 | $359 |
| Suburban Cleveland | 60 | 161 | 150 | 150 | 189 | 220 |
| Downtown Cincinnati | 40 | 213 | 153 | 200 | 271 | 368 |
| Suburban Cincinnati | 21 | 173 | 145 | 175 | 183 | 249 |
| Downtown Columbus | 67 | 217 | 165 | 210 | 260 | 334 |
| Suburban Columbus | 53 | 164 | 145 | 150 | 200 | 243 |
| Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Canton | 12 | 154 | 116 | 153 | 183 | 250 |
| Akron | 41 | 186 | 150 | 190 | 223 | 273 |
| Toledo | 26 | 170 | 144 | 168 | 186 | 285 |
| Youngstown | 9 | 146 | 113 | 150 | 178 | 200 |
| Northeast Ohio | 36 | 149 | 125 | 138 | 188 | 225 |
| Northwest Ohio | 21 | 129 | 100 | 125 | 150 | 180 |
| Southeast Ohio | 16 | 155 | 125 | 150 | 188 | 250 |
| Southwest Ohio | 25 | 146 | 125 | 150 | 170 | 207 |
| Central Ohio | 15 | 171 | 150 | 165 | 185 | 250 |
| **All Attorneys** | 530 | $182 | $150 | $175 | $210 | $300 |

**Exhibit 22        2004 HOURLY BILLING RATES BY PRIMARY FIELD OF LAW AND PRACTICE CLASS**

| Primary Field of Law | N | Mean | 25th | Median | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| Administrative Law | 5 | $241 | $188 | $260 | $285 | $295 |
| Bankruptcy, Debtor | 18 | 135 | 115 | 150 | 168 | 190 |
| Collections | 10 | 146 | 119 | 135 | 164 | 250 |
| Corporate/Business Law | 48 | 201 | 150 | 183 | 225 | 340 |
| Criminal (Public Defendant) | 9 | 139 | 100 | 125 | 175 | 225 |
| Criminal (Private Defendant) | 12 | 154 | 125 | 150 | 173 | 250 |
| Domestic Relations/Family Law | 55 | 173 | 125 | 150 | 200 | 280 |
| Environmental Law/Natural Resources Law | 6 | 200 | 151 | 168 | 283 | 305 |
| General Practice | 14 | 136 | 118 | 132 | 161 | 185 |
| Health & Hospital Law | 6 | 203 | 148 | 195 | 263 | 300 |
| Intellectual Property | 10 | 216 | 174 | 223 | 250 | 300 |
| Labor Law (Management) | 6 | 185 | 150 | 168 | 236 | 255 |
| Employment Law (Management) | 25 | 187 | 138 | 175 | 238 | 324 |
| Employment Law (Labor) | 6 | 178 | 151 | 175 | 208 | 230 |
| Municipal/Public Entity Law | 8 | 164 | 111 | 138 | 225 | 305 |
| Product Liability | 5 | 226 | 138 | 205 | 325 | 425 |
| Personal Injury (Defendant) | 25 | 148 | 110 | 135 | 175 | 270 |
| Personal Injury (Plaintiff) | 43 | 179 | 150 | 160 | 200 | 300 |
| Professional Liability | 6 | 164 | 149 | 165 | 178 | 185 |
| Real Property Law | 26 | 164 | 125 | 150 | 195 | 315 |
| Taxation | 7 | 231 | 175 | 220 | 295 | 300 |
| Trial Practice, not PI (General Civil) | 20 | 190 | 140 | 177 | 200 | 415 |
| Trial Practice, not PI (Commercial) | 20 | 224 | 181 | 210 | 276 | 387 |
| Estate Planning/Wealth Management | 36 | 209 | 175 | 205 | 233 | 308 |
| Probate, Decedents' Estates | 49 | 176 | 150 | 175 | 200 | 250 |
| Workers' Compensation (Plaintiff) | 6 | 167 | 125 | 150 | 213 | 250 |
| Other | 23 | 200 | 150 | 190 | 250 | 358 |
| **Practice Classification** | | | | | | |
| Sole Practitioner | 168 | $153 | $125 | $150 | $175 | $225 |
| Solo with 1+ associates | 42 | 181 | 150 | 175 | 203 | 259 |
| Space Sharer | 21 | 160 | 125 | 150 | 175 | 275 |
| Partner in Firm with 2-7 Partners | 114 | 184 | 150 | 175 | 221 | 300 |
| Partner in Firm with 8+ Partners | 88 | 249 | 196 | 240 | 300 | 381 |
| Associate in Firm with 2-7 Partners | 31 | 156 | 125 | 150 | 175 | 264 |
| Associate in Firm with 8+ Partners | 56 | 180 | 150 | 175 | 210 | 263 |
| **All Attorneys** | 530 | $182 | $150 | $175 | $210 | $300 |

## Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience in Exhibit 23, by office location (Exhibits 24 and 25), and by firm size (Exhibits 26 and 27).

**Exhibit 26**  **DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND YEARS OF EXPERIENCE**

| Associate Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
|---|---|---|---|---|---|
| | 2 | 3-6 | 7-20 | 21+ | All |
| **No Experience** | | | | | |
| <$135 | 57.9 | 78.1 | 69.0 | 43.5 | 61.9 |
| $136-145 | 15.8 | 9.4 | 10.3 | 19.6 | 13.5 |
| $146-155 | 15.8 | 9.4 | 17.2 | 19.6 | 16.1 |
| $156-165 | | | 1.7 | 6.5 | 2.6 |
| $166-175 | 10.5 | | 1.7 | 4.3 | 3.2 |
| $176-199 | | | | 6.5 | 1.9 |
| $225-249 | | 3.1 | | | 0.6 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | |
| <$135 | 43.8 | 35.3 | 39.0 | 13.0 | 31.0 |
| $136-145 | 18.8 | 20.6 | 22.0 | 19.6 | 20.6 |
| $146-155 | 25.0 | 29.4 | 20.3 | 21.7 | 23.2 |
| $156-165 | | 11.8 | 6.8 | 13.0 | 9.0 |
| $166-175 | 6.3 | 2.9 | 6.8 | 23.9 | 11.0 |
| $176-199 | 6.3 | | 5.1 | 8.7 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | |
| <$135 | 12.5 | 24.0 | 25.0 | 4.3 | 16.9 |
| $136-145 | 25.0 | 8.0 | 10.7 | 10.6 | 11.0 |
| $146-155 | 12.5 | 40.0 | 25.0 | 10.6 | 22.1 |
| $156-165 | 12.5 | 12.0 | 17.9 | 17.0 | 16.2 |
| $166-175 | | 16.0 | 10.7 | 10.6 | 11.0 |
| $176-199 | 12.5 | | 10.7 | 29.8 | 15.4 |
| $200-224 | 25.0 | | | 14.9 | 6.6 |
| $225-249 | | | | 2.1 | 0.7 |
| Total | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | |
| <$135 | 33.3 | 14.8 | 19.5 | 5.4 | 14.9 |
| $136-145 | 11.1 | | 4.9 | 2.7 | 3.5 |
| $146-155 | | 22.2 | 14.6 | 5.4 | 12.3 |
| $156-165 | 22.2 | 7.4 | 4.9 | 5.4 | 7.0 |
| $166-175 | | 14.8 | 14.6 | 16.2 | 14.0 |
| $176-199 | | 18.5 | 26.8 | 18.9 | 20.2 |
| $200-224 | 22.2 | 18.5 | 14.6 | 18.9 | 17.5 |
| $225-249 | 11.1 | 3.7 | | 10.8 | 5.3 |
| $250+ | | | | 16.2 | 5.3 |
| Total | 100% | 100% | 100% | 100% | 100% |

**Exhibit 27**    **DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE**

| Legal Assistant Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
| | 2 | 3-6 | 7-20 | 21+ | All Firms |
|---|---|---|---|---|---|
| **No Experience** | | | | | |
| $50 or less | 40.0 | 60.0 | 50.0 | 20.0 | 41.0 |
| $51-60 | 30.0 | 20.0 | 20.0 | 17.1 | 20.0 |
| $61-70 | 10.0 | 4.0 | 10.0 | 5.7 | 7.0 |
| $71-80 | 20.0 | 8.0 | 10.0 | 25.7 | 16.0 |
| $81-90 | | 4.0 | 10.0 | 8.6 | 7.0 |
| $91-100 | | 4.0 | | 17.1 | 7.0 |
| $101-110 | | | | 5.7 | 2.0 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **3 Years Experience** | | | | | |
| $50 or less | 12.5 | 25.0 | 13.3 | 2.8 | 11.7 |
| $51-60 | 62.5 | 35.0 | 23.3 | 11.1 | 24.5 |
| $61-70 | | 20.0 | 26.7 | 22.2 | 21.3 |
| $71-80 | | 10.0 | 13.3 | 11.1 | 10.6 |
| $81-90 | 12.5 | 5.0 | 10.0 | 22.2 | 13.8 |
| $91-100 | 12.5 | | 10.0 | 8.3 | 7.4 |
| $101-110 | | 5.0 | 3.3 | 8.3 | 5.3 |
| $111-120 | | | | 11.1 | 4.3 |
| >$120 | | | | 2.8 | 1.1 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **5 Years Experience** | | | | | |
| $50 or less | 16.7 | 4.5 | 8.6 | 2.9 | 6.2 |
| $51-60 | | 27.3 | 17.1 | 5.9 | 14.4 |
| $61-70 | 66.7 | 22.7 | 11.4 | 14.7 | 18.6 |
| $71-80 | 16.7 | 31.8 | 34.3 | 11.8 | 24.7 |
| $81-90 | | 4.5 | 14.3 | 11.8 | 10.3 |
| $91-100 | | | 11.4 | 17.6 | 10.3 |
| $101-110 | | 9.1 | | 11.8 | 6.2 |
| $111-120 | | | | 11.8 | 4.1 |
| >$120 | | | 2.9 | 11.8 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **10 Years Experience** | | | | | |
| $50 or less | 20.0 | | 2.7 | 3.0 | 3.9 |
| $51-60 | 20.0 | 9.1 | 18.9 | 3.0 | 11.8 |
| $61-70 | | 13.6 | 13.5 | 12.1 | 11.8 |
| $71-80 | 30.0 | 40.9 | 18.9 | 6.1 | 20.6 |
| $81-90 | 10.0 | 18.2 | 21.6 | 6.1 | 14.7 |
| $91-100 | | 13.6 | 16.2 | 18.2 | 14.7 |
| $101-110 | | 4.5 | | 12.1 | 4.9 |
| $111-120 | 20.0 | | 5.4 | 18.2 | 9.8 |
| >$120 | | | 2.7 | 21.2 | 7.8 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 28 displays the impact of firm size on methods for client billing for legal assistants:

**Exhibit 28**    **LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2004**

| Billing Method for Legal Assistants | Firm Size (Number of Attorneys) | | | | | |
| | 1 | 2 | 3-6 | 7-20 | 21+ | All Firms |
|---|---|---|---|---|---|---|
| Included with Attorney Fee | 47.1 | 59.5 | 39.7 | 19.7 | 4.7 | 32.1 |
| Time | 42.9 | 35.1 | 55.2 | 73.8 | 87.5 | 60.7 |
| Fee Schedule | 8.6 | 5.4 | 5.2 | 3.3 | 6.3 | 5.9 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| v. | ) ) | 1:07-cv-00587 CKK |
| H2O INDUSTRIAL SERVICES, INC.<br>   a/k/a H2O Industrial Services, LLC<br>   a/k/a H2O Industrial Services LLC<br>   a/k/a H2O Industrial Services | ) ) ) ) ) | |
| Defendant | ) | |

## **DEFAULT JUDGMENT**

Upon consideration of the Complaint and Motion for Entry of Judgment by

Default of the Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Fund,"

"Pension Fund" or "Plaintiff"), it appears to the Court that Defendant, H2O Industrial Services,

Inc. a/k/a H2O Industrial Services, LLC a/k/a H2O Industrial Services LLC a/k/a H2O Industrial

Services ("Company" or "Defendant"), has willfully failed to appear, plead or otherwise defend,

and it is ORDERED:

     1.     Plaintiff's Motion is **GRANTED**;

     2.     Judgment is entered against Company, and in favor of Plaintiff in the total amount

of $16,838.32, itemized as follows:

     (a)     Unpaid contributions for the months of April 2006 through August 2006 in the

amount of $10,606.66 under 29 U.S.C. §1132(g)(2) and 185(a);

     (b)     Late charges for the period February 2006 through June 2006 in the amount of

$30.21;

182984-1

(c)    Interest from the date contributions became due until May 15, 2007 in the amount

of $664.16;

(d)    Liquidated damages in the amount of $2,121.34, which is twenty percent (20%)

of the total amount owed the Fund for unpaid contributions or contributions paid late;

(e)    Attorneys' fees and costs in the amount of $3,415.95 incurred by Plaintiff through

May 14, 2007, as provided in 29 U.S.C. §1132(g)(2)(D).

3.    Defendant, its owners, officers, agents, servants, attorneys and all persons acting

on their behalf or in conjunction with them shall be and hereby are restrained and enjoined from

refusing to file complete, proper and timely remittance reports with accompanying pension

contributions for all periods for which Defendant is obligated to do so under its collective

bargaining agreement(s).

4.    If further action by the Pension Fund is required to obtain payment of the

amounts owed by Defendant, it may apply to this Court or to the court in which enforcement is

sought, for such further reasonable attorneys' fees and costs in addition to those set out in

Paragraph 2(d) above. *See*, *Trucking Employees of North Jersey Welfare Fund, Inc. v. Bellezza

Co.*, 57 Fed. Appx. 972 (3d Cir. 2003); *International Painters and Allied Trades Industry

Pension Fund v. H.W. Ellis Painting Co., Inc.*, No. 03-1125, slip. op. at *3 (D.D.C. February 10,

2004) (citing *Free v. Briody*, 793 F.2d 807 (7th Cir. 1986); *Sheet Metal Workers Health and

Welfare Trust Fund v. Big D Service Co.*, 867 F.2d 852 (10th Cir. 1989)).

5.    Within ten (10) days of the entry of this Order, Defendant shall fully and

accurately complete and submit to the Plaintiff any and all outstanding remittance reports,

including but not limited to reports and contributions for the period January 2007 through March

2007, together with a check for the full amount of the contributions and dues due, including interest and liquidated damages.

6.     Within twenty (20) days of a request by Plaintiff or its counsel, Defendant shall make available to the designated representative of the Plaintiff all payroll books and related records necessary for Plaintiff to ascertain the precise amount of any delinquent contributions due and owing to Plaintiff for all periods in which Defendant is obligated to make fringe benefit contributions to the Plaintiff and Defendant shall bear the costs of said audit.

7.     Plaintiff shall have the right to conduct future audits for all relevant periods, including the time periods covered by this judgment. Defendant shall be and hereby is restrained and enjoined from failing and refusing to submit to such audits by certified public accountants selected by Plaintiff and shall produce all payroll books and related records requested by Plaintiff, including, but not limited to, payroll, wages, general ledger and cash disbursement records, compensation insurance audits and any other pertinent records deemed necessary for the purpose of ascertaining and/or verifying payments and/or liabilities to Plaintiff. Defendant shall pay Plaintiff any additional amounts found owing, plus such other amounts as set forth in the Agreement, the Agreement and Declaration of Trust of the Pension Fund, the International Painters and Allied Trades Industry Pension Plan, ERISA or any other applicable law.

8.     If additional delinquencies are discovered pursuant to the submission of the remittance reports or to the audit referred to above, or as a result of additional information that becomes available to the Plaintiff, the Plaintiff may apply to the Court for an additional or supplemental judgment reflecting any additional delinquencies, interest, liquidated damages, attorneys' fees and costs, pursuant to ERISA, 29 U.S.C. §1132(g)(2) together with any audit costs incurred by the Plaintiff.

9.     Plaintiff is awarded reimbursement of all additional attorneys' fees and costs it incurs in the collection and enforcement of this judgment as well as those incurred in the collection of delinquent contributions which may be found to be due as a result of the audit provided for in this Order.

10.     If Defendant fails to comply with any of the terms of this Order, the Plaintiff may, in addition to pursuing the remedies provided for under Federal Rule of Civil Procedure 69, reopen this case upon motion to the Court and notice to the Defendant, and may at that time ask for further appropriate monetary and/or injunctive relief.

<br>

_____
COLLEEN KOLLAR-KOTELLY          J.
United States District Judge

Date:_____

Copies of this Default Judgment shall be sent to:

Sanford G. Rosenthal, Esquire
Jerome A. Flanagan, Esquire
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683

H2O Industrial Services, Inc.
a/k/a H2O Industrial Services, LLC
a/k/a H2O Industrial Services LLC
a/k/a H2O Industrial Services
284 West 1050 North
Chesterton, IN 46304